## PennDOT v. Snyder

*Richelle Sanders Fisher, assistant counsel,* for the commonwealth.

*James A. Gillin,* for defendant.

WRIGHT, *J.,* July 7, 1989 — The Commonwealth of Pennsylvania, Department of Transportation suspended the motor vehicle driving privileges of Ralph Eugene Snyder for failure to take a chemical test pursuant to section 1547 of the Motor Vehicle Code.

Snyder appealed to this court and after a hearing this court dismissed his appeal. Snyder appealed the dismissal to the Commonwealth Court necessitating the writing of this opinion.

On November 30, 1988 Lieutenant Robert D. Ieradi, an Eddystone Borough Police Officer, saw Snyder pass a red traffic light and turn left heading westbound on Chester Pike. The officer was traveling east on Chester Pike and after Snyder made the left turn Snyder crossed the center line of Chester Pike and went into the eastbound lane. He swerved back into a westbound land and the officer activated his emergency lights, made a U-turn and pursued Snyder. While in pursuit the officer observed Snyder "[s]werving and weaving within the two westbound lanes." Snyder stopped for a stop light and the officer stopped behind him. As the officer exited his police vehicle Snyder drove away. The officer got back in the police vehicle and again began to pursue Snyder. After entering the City of Chester Snyder turned right onto Ridley Avenue and after traveling approximately 100 feet stopped for the officer. Snyder opened his door and partially fell out of his vehicle. When he got out of his vehicle he walked with a staggering gait, his eyes were bloodshot, he had slurred speech, needed assistance to stand up and there was a strong odor of alcohol on his breath. The officer advised Snyder that he failed to stop for a red traffic light and that the officer was of the opinion that he was "[u]nder the influence of alcohol to a degree that rendered him incapable of safe driving." When the officer asked Snyder for identification he produced a registration card and told the officer, "[T]hat's all you're getting." The officer asked him "if he wanted to take a sobriety test numerous times and he refused and said he was leaving." Later the officer again asked Snyder to

take a sobriety test and he refused. *The officer then* advised Snyder that he was under arrest for driving under the influence of alcohol. Snyder said "No way . . . I'm leaving," and started for his automobile. The officer told Snyder to stop and grabbed him by the right arm. Snyder grabbed the officer's right arm and coat and threw the officer against the side of the automobile. Two other officers had arrived and they assisted Officer Ieradi in handcuffing Snyder. Snyder was then placed in a police vehicle and taken to the police station. The officer testified:

Q: Did you ask him to submit to a test?

A: Once at the station, he was advised of the *Miranda* rights, and also he was advised of consent law. And he was advised that if he — you know, to take a breath test, which he refused. I advised him that he — if he refuses, he would lose his license for 12 months.

Q: Why did he refuse? Did he say?

A: I don't recall.

Q: After you . . .

A: He refused to sign my *Miranda* card also.

Q: After you warned him that he would lose his license for a year if he didn't take the test, did he agree to take the test?

A: He just kept calling us obscenities, and it's on my affidavit. If you want me to repeat them, I will.

Q: How many times did you ask him to take the test?

A: The breath test?

Q: Yes.

A: Twice.

Q: And how many times did you tell him he'd lose his license if he didn't take the test?

A: Twice.

Q: And how many times did he refuse?

A: Every time I asked. . . .

Q: When — when you read him the *Miranda* rights, and arrested him at the station. What did you —

A: Okay. I read him his *Miranda* rights, and I had the card with him —

Q: Uh-huh.

A: Okay, with him. I advised him that I wanted him — I requested him to take a breath test, at which time he just kept calling me "s———" and other names. I also told him that he will lose his license if he failed to do so.

When the officer was asked if Snyder mentioned anything else he testified:

"I'm not taking any — he says I'm not taking anything. You have nothing on me. I believe that's in my affidavit."

The officer also testified that Snyder:

A: [D]emanded to call his lawyer. He was then requested to take a breath test, in which he refused.

Q: Was he allowed to call a lawyer?

A: After he calmed down, I gave him his choice to call a lawyer or his family or whoever he wanted to call.

This court entered an order directing Snyder to file a concise statement of matters complained of on appeal. The order, as per the provisions of Pennsylvania Rule of Appellate Procedure 1925, directed that a copy of the concise statement be served upon the trial judge. (As of the writing of this opinion no such statement has been served upon the trial judge.)

In order to suspend a person's operating privilege for failure to submit to a chemical test, the department must prove that the operator has been placed under arrest on the charge of driving under the

influence of alcohol or drugs; that the operator was requested to submit to a chemical test; and that the operator was warned that his operating privileges would be suspended for 12 months if the operator refused to take the test. *Herbert v. Commonwealth,* 75 Pa. Commw. 28, 460 A.2d 920 (1983). The evidence is clear that the requirements of *Herbert* were met by the arresting officer and at no time in these proceedings, to our knowledge, has Snyder contended that the requirements of *Herbert* were not met.

In this case Snyder was given his *Miranda* warnings and immediately thereafter requested to take the chemical test and was told if he refused to take the test his operating privilege would be suspended for 12 months.

Snyder contends that his operating privilege was improperly suspended because he was not told that the *Miranda* warnings with respect to his right to consult an attorney do not apply to the decision of whether or not to take a chemical test.

Section 1547(b) provides:

"(b) *Suspension for refusal* —

"(1) If any person placed under arrest for a violation of section 3731 (relating to driving under influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person for a period of 12 months.

"(2) It shall be the duty of the police officer to inform the person that the person's operating privilege will be suspended upon refusal to submit to chemical testing."

In this particular case, did the failure of the officer to advise Snyder that the *Miranda* warnings

do not apply to the refusal to take a chemical test prohibit the department from suspending Snyder's operating privileges for violation of section 1547(b) of the Motor Vehicle Code?

In *Commonwealth, Department of Transportation v. O'Connell,* 99 Pa. Commw. 410, 513 A.2d 1083 (1986), O'Connell appealed his suspension for failure to submit to a breathalyzer test. O'Connell had been given his *Miranda* warnings and directed to give his answers in writing. He first answered that he did not want to talk to an attorney before being questioned but later changed that answer to yes.

Without being advised that the *Miranda* warnings do not apply to chemical tests he was asked to take a breathalyzer test and he refused to take the test. The Commonwealth Court held that O'Connell's operating privilege was properly suspended.[1] The Commonwealth Court stated:

"We now clarify that *Doherty* and *Ferrara* do not place upon a police officer the automatic duty to inform every arrestee that the *Miranda* right to counsel does not apply to the breathalyzer test. The duty arises only where the arrestee responds to the request that he take the test with an inquiry regarding whether he may consult with someone before making a decision." *O'Connell, supra.*

In *McFadden v. Commonwealth,* 108 Pa. Commw. 194, 529 A.2d 88 (1987), McFadden was given his *Miranda* rights and was then asked to take a breathalyzer test and he refused. McFadden asked to make a telephone call and was permitted to do so. After making a telephone call he still refused to take

---

1. Subsequent to our decision we learned that the Supreme Court of Pennsylvania reversed the Commonwealth Court. We will refer to the Supreme Court reversal later in this opinion.

the breathalyzer test. The department suspended his operating privilege for failure to take the breathalyzer test. The Commonwealth Court decided that the department had properly suspended McFadden's operating privilege and dismissed his appeal.[2] The Commonwealth Court stated:

"However, when the arrestee responds to the request that he take the test with an inquiry regarding whether he may consult with someone before making a decision, the duty then arises in the officer to inform the arrestee that the *Miranda* right to counsel does not apply to the breathalyzer test. Hence, the instant case is distinguishable from *O'Connell.* Here, when McFadden inquired as to whether he could make a phone call, Officer Twist consented. Thus, if Officer Twist had not consented to McFadden's request, then Officer Twist would have been required to advise McFadden that the *Miranda* right to counsel does not apply to the breathalyzer test.

"Lastly, the trial court concluded, based upon the testimony of Officer Twist, that McFadden did make a knowing and conscious refusal to take the breathalyzer test." *McFadden, supra.* (citation and footnote omitted)

In *Earley v. Commonwealth, Department of Transportation,* 121 Pa. Commw. 64, 550 A.2d 267 (1988), it was reported to the department that Earley had refused to take a breathalyzer test and the department suspended his operating privilege. Earley was advised of his *Miranda* rights and was then asked to take a breathalyzer test. He was advised that failure to take the test would result in

---

2. When the order of April 24, 1989 was entered we were not aware that the Supreme Court of Pennsylvania had reversed the Commonwealth Court. The Supreme Court decision will be referred to *infra.*

his operating privilege being suspended. Earley. than asked to speak to his *father*. (Earley's father was an attorney but this was unknown to the police.) The police refused to let Earley speak to his father and warned him several times that refusal to take the test would result in suspension of his operating privilege. Earley refused. The Commonwealth Court held that Earley had refused to take the breathalyzer test and that his operating privilege was properly suspended. The Commonwealth Court said:

"Appellant misinterprets the *O'Connell* decision. Clearly, *O'Connell* imposes a duty upon the police to inform the arrestee that the *Miranda* right to counsel does not apply when the arrestee indicates to police that he desires to consult an attorney. As we stated in *O'Connell,* a police officer does not have an 'automatic duty to inform every arrestee that the *Miranda* right to counsel does not apply to the breathalyzer test.' *Id.* at 415, 513 A.2d at 1085. It is only in the case where an arrestee requests to speak to an attorney before deciding whether to submit to a breathalyzer test that the possibility of confusion regarding the applicability of the *Miranda* rights to counsel exists.

"In this case, appellant did not request to speak to an attorney. Appellant only asked to speak to his father. Police had no way of knowing appellant's father was an attorney. Therefore, police had no duty to inform appellant that the *Miranda* right to counsel did not apply."[3] *Early, supra.*

Before entering the order of April 24, 1989 we considered the Commonwealth Court's opinions in

3. The Commonwealth Court indicated that had Earley indicated he wanted to speak to an attorney or that his father was an attorney, then the police would have been required to advise Earley that the *Miranda* warnings do not apply to chemical tests.

*O'Connell, McFadden, Earley* and some of the Commonwealth Court's other opinions on this issue. We concluded, based on the decisions of the Commonwealth Court, that early on where *Miranda* rights were given and then a request is made to take a chemical test that the police were not required to advise that the *Miranda* rights do not apply to the request to take a chemical test. We further conclude, based on later decisions, that if the request to talk to an attorney is made and not granted but the refusal to take the test is not related to the *Miranda* rights, that the police are not required to advise that the *Miranda* rights do not apply to the request to take a chemical test. We also concluded, based on later decisions, that if the factual situation is such that a person would be confused as to whether the *Miranda* rights applied to the request to take a chemical test, then there can be no license suspension for refusal to take the chemical test unless the police advise that the *Miranda* rights do not apply to refusal to take a chemical test.

The court in the case sub judice found the police officer's testimony to be credible. Based on the officer's testimony it was clear to this court that Snyder was not going to do anything that the officers requested or ordered him to do unless he was forced to do so. After considering all of the evidence presented we found as a fact that Snyder's refusal to take the breathalyzer test was not based in any way whatsoever on his *Miranda* rights and that he was not confused as to whether the *Miranda* rights applied.

In the Supreme Court case of *Commonwealth, Department of Transportation v. O'Connell,* 521 Pa. 242, 555 A.2d 873 (1989), which reversed the Commonwealth Court *O'Connell* case, the Supreme Court said:

"Thus, the trial court was confronted with two witnesses who remembered the events of June 19, 1983 quite differently and who was in the position to decide for himself which of the two witnesses was more credible. The trial court chose to believe appellant and his findings in this regard are conclusive. It was not for the Commonwealth Court to read into the record, weigh the evidence, and to decide for itself that appellant did or did not state his reasons to the officer or that appellant could or could not recall what he said to the officer. That, as we have said, was for the trial court to do. We read this record to contain evidence, which can support appellant's position, that he was misled into thinking that he had a right to speak to his attorney before taking the breathalyzer test, and therefore affirm the trial court's findings in appellant's favor. To the extent that the Commonwealth Court chose to accept and reject portions of appellant's testimony and, in effect, to make its own findings of fact, it exceeded its scope of review and its decision must be reversed.

"Appellant also argues, however, that this whole controversy arose because the request to take a breathalyzer test came hot on the heels of the *Miranda* questioning. Appellant specifically chose to exercise his right to speak to his attorney before proceeding any further in any questioning dealing with the drunk driving charges. Since the appellant chose to exercise his rights, the arresting officer promptly and properly stopped any questioning, but did not let appellant make his phone call. Instead, the officer began his requests that appellant submit to the breathalyzer test.

"Appellant argues that when he chose to exercise

his right to speak with an attorney and his request was met with a request to take a test, he was confused."

The Supreme Court also said:

"The problem in this case, and many similar cases that have arisen, is that these requests to take breathalyzer tests take place as part of the investigation conducted by police in regards to a drunk driving charge which is criminal in nature. The police proceed with the *Miranda* warnings and at some point (usually when the driver asks to see his lawyer) stop questioning and abruptly change 'hats' and ask the driver to submit to the breathalyzer test. If the arrestee hesitates and attempts to exercise his *Miranda* right by asking for a lawyer or asking to make a phone call, a refusal is recorded.

"This state of affairs is unacceptable because it is fraught with pitfalls for the arrestee who is not trained to recognize the difference between a civil or criminal investigation and becomes a source of accusation of manipulation by the police over confused individuals who are suspected of having dulled senses.

"The law always required that the police must tell the arrestee of the consequences of a refusal to take the test so that he can make a knowing and conscious choice. See *Everhart v. Commonwealth*, 54 Pa. Commw. 22, 420 A.2d 13 (1980); *Ford v. Department of Transportation, Bureau of Traffic Safety*, 45 Pa. Commw. 268, 406 A.2d 240 (1979).

"Accordingly, where an arrestee requests to speak to or call an attorney, or anyone else, when requested to take a breathalyzer test, we insist that in addition to telling an arrestee that his license will be suspended for one year if he refuses to take a breathalyzer test, the police instruct the arrestee that such rights are inapplicable to the breathalyzer

test and that the arrestee does not have the right to consult with attorney or anyone else prior to taking the test.

"An arrestee is entitled to this information so that his choice to take a breathalyzer test can be knowing and conscious and we believe that requiring the police to qualify the extent of the right to counsel is neither onerous nor will it unnecessarily delay the taking of the test.

"Since the course of conduct of the police creates the confusion in these cases, it is appropriate to place the duty on them to clarify the extent of the right of counsel when asking arrestees to take breathalyzer tests thereby insuring that those arrestees who indicate their confusion over their *Miranda* rights, are not being misled into making uninformed and unknowing decisions to take the test." (footnote omitted)

In the Supreme Court *O'Connell* case that court said that the trial court is the fact finder and that the Commonwealth Court erred in its determination that the trial court incorrectly determined the facts. In the case sub judice we found the facts to be as testified to by the police officer.

Portions of the Supreme Court *O'Connell* case do indicate to us that the Supreme Court held that in every case where police request that a chemical test be taken and the driver asks to speak to an attorney that the police *must* advise the driver that the *Miranda* rights do not apply to requests to take a chemical test. If the Supreme Court decision is not just limited to the facts of the *O'Connell* case then it appears that this court's decision is incorrect.

The Supreme Court *McFadden* case, 522 Pa. 100, 559 A.2d 924 (1989) states:

"This appeal by permission followed and appellant renews his argument that for a refusal to take a

breathalyzer test to be knowing and conscious, a licensee must be told, prior to taking the test, that the *Miranda* right to counsel is not applicable. We agree and this issue is now controlled by our recent decision in *Department of Transportation, Bureau of Traffic Safety v. O'Connell,* 521 Pa. 242, 555 A.2d 873 (1989).

"Since the police did not give appellant the information required by *O'Connell* to satisfy our requirements that a licensee make a knowing and conscious refusal, and since appellant has preserved this issue on appeal to us, we will apply the holding of *O'Connell* to this case and conclude that appellant has sustained his burden to demonstrate that his refusal was not knowing and conscious."

The Supreme Court *McFadden* case seems to indicate that in all cases the police must advise the driver that the *Miranda* warnings do not apply to the request to take a chemical test and would seem to indicate that this court's decision was erroneous.

In the case sub judice at the end of the department's case Snyder's attorney stated that he was making a motion in the nature of a demurrer. He then made his argument that there was an improper suspension in that Snyder had not been advised that his *Miranda* rights did not apply to request to take chemical tests. This court at the end of arguments of counsel stated it would listen to the recorded testimony and make a decision. After listening to the recorded testimony and reviewing Commonwealth Court decisions the April 24, 1989 order was entered on the basis "that there was no connection between the *Miranda* warnings given to Ralph Eugene Snyder and his refusal to submit to a breathalyzer test . . . "

At the time of the court stated "I'm going to listen to, (the recording) and I'll make a determination."

The attorney for Snyder at that time did not indicate that he wanted to present evidence if the "demurrer" was refused. The court in refusing the request felt that Snyder's attorney should have pointed out to the court he didn't want to be placed in a position of presenting evidence and later be told that he waived the legal issue he raised on the "demurrer" by presenting evidence. After the order was entered Snyder's attorney wrote requesting that the court suspend the order and hear Snyder's testimony. The court refused because it would be unfair to the department to give Snyder a "second bite on the apple." The court felt that Snyder's attorney should have indicated at the time that he wanted to present evidence if his "demurrer" was not granted. It was the court's intention that it would be making the final decision of the court in this case.

If the Commonwealth Court does not conclude that the Supreme Court has flatly ruled that the police officers must advise that the *Miranda* rights do not apply to requests to take chemical tests but concludes that it was wrong for this court to refuse to schedule a hearing to permit Snyder to present evidence, we suggest that the case be remanded to this court for the purpose of hearing Snyder's evidence.